IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BRADLEY WILLIAMSON and CAROLINE WILLIAMSON,**  Plaintiffs,  v.  **CHUBB INDEMNITY INSURANCE COMPANY,**  Defendant. | CIVIL ACTION  NO. 11-cv-6476 |

**MEMORANDUM RE: DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

**Baylson, J.**                                                                                           **December 19, 2013**

**I.      Introduction**

Plaintiffs Bradley and Caroline Williamson bring this action against its insurance carrier, Defendant Chubb Indemnity Insurance Company ("Chubb"), for bad faith in violation of 42 Pa. Stat. § 8371. Chubb moves to dismiss Plaintiffs' Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Chubb's Motion is denied.

**II.     Facts[1]**

Plaintiffs maintain a homeowner's insurance policy with Chubb over their residence in Fort Washington, PA. DE 25 ¶ 8. On September 30, 2009, Plaintiffs' home was damaged. DE 25 ¶ 10. Plaintiffs' notified Chubb of their claim, and Chubb acknowledged that the damage was

---

[1] These factual allegations are taken from the Amended Complaint. They are presumed true for the purpose of evaluating Defendant's Motion to Dismiss. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

covered under the policy. DE 25 ¶¶ 12, 14. Chubb retained an independent contractor, Eastern Diversified Services ("EDS"), to assess the amount of Plaintiffs' loss. DE 25 ¶ 13. EDS estimated Plaintiffs' loss to be $193,270.43. DE 25 ¶ 15. Chubb paid Plaintiffs based on EDS's damage estimate. DE 25 ¶ 16.

Estimates for homeowner's insurance claims are prepared on a "unit cost" basis. DE 25 ¶ 20. Unit-cost estimates break down repairs to individual components and assign a unit cost to each component of a repair. DE 25 ¶ 21. Estimates for benefits due under a homeowner's insurance policy are customarily prepared using estimating software programs. DE 25 ¶ 17. These programs contain databases of unit costs from which the program calculates the total estimate of a particular job. DE 25 ¶ 22. The unit costs assigned to various repair components vary depending on the software program used to prepare the estimate. DE 25 ¶ 23. Accordingly, different software programs evaluating the same repair will produce different estimates. DE 25 ¶ 25.

Chubb's standard practice is to conduct damage estimates itself using an estimating program called Symbility. DE 25 ¶¶ 18, 27, 28. EDS uses an estimating program called Xactimate—and used this program to conduct Plaintiffs' estimate. DE 25 ¶¶ 19, 30, and Ex. A at 1. The unit costs in the Xactimate database used by EDS are lower than the unit costs in the Symbility database used by Chubb. DE 25 ¶ 25. Accordingly, Chubb paid Plaintiffs' claim based on an estimate using lower unit costs than if Chubb had prepared the estimate itself. DE 25 ¶ 26.

Plaintiffs engaged the services of a public adjuster. On April 13, 2011, and on May 31, 2011, Plaintiffs, through their public adjuster, sent letters to Chubb requesting that it rewrite the EDS estimate using the Symbility program. DE 25 ¶ 32. The letters stated that Chubb had an

obligation to calculate Plaintiffs' loss in the same manner and fashion as it would all other claims, DE 25 Ex. A at 1, and that Chubb had failed to do so because the unit costs in the Xactimate database are consistently less than those in the Symbility database, DE 25 Ex. B at 1. Chubb refused to recalculate the estimate. DE 25 ¶ 33.

### III. Procedural History

Plaintiffs initiated this action in the Pennsylvania Court of Common Pleas of Philadelphia County on June 1, 2011, bringing claims for breach of contract and bad faith. On October 17, 2011, the case was removed to this Court. DE 1. On October 24, 2011, Chubb filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. DE 3. Chubb's Motion sought to dismiss the complaint so that the parties could engage in an independent appraisal process for disputes relating to the amount of loss, pursuant to a provision in the insurance policy. In its Order dated March 8, 2012, the Court dismissed the breach of contract claim without prejudice, ordered the parties to engage in the appraisal process required by the insurance policy, deferred consideration of the bad faith claim until the appraisal process produced an award, and denied Chubb's alternative Motion for Summary Judgment. DE 12.

The appraisal award was rendered on December 18, 2012, which valued Plaintiffs' claim at $203,450.11, or $6,094.73 more than EDS's original valuation. DE 19 at 2. Chubb moved the Court to confirm the award and reinitiated its Motion for Summary Judgment. DE 16. In its Order dated June 17, 2013, the Court confirmed the appraisal award but deferred ruling on Chubb's Motion for Summary Judgment. DE 20.

On August 20, 2013, Plaintiffs filed an Amended Complaint, asserting a single claim for bad faith. DE 25. Chubb filed a Motion to Dismiss the Amended Complaint on September 9, 2013. DE 26. Plaintiffs filed a response in opposition and Chubb replied. DE 28, 29.

## IV. Contentions of the Parties

### A. Plaintiff's Claim in the Amended Complaint

In their Amended Complaint, Plaintiffs allege that one of the benefits associated with paying the premiums of their policy is to have their claims handled according to Chubb's standard practices. DE 25 ¶ 28. Plaintiffs contend that under these standard practices their damage claim would be estimated with the Symbility software—Chubb's in-house estimation program. DE 25 ¶¶ 28, 31. Plaintiffs also allege that Chubb knew at the time it engaged EDS that EDS would quote a lower estimate than an estimate generated by Symbility. DE 25 ¶ 34. According to Plaintiffs, by using EDS and departing from its own estimating standards, Chubb intended to and succeeded in obtaining an estimate that it could use to justify underpaying Plaintiffs' claim. DE 25 ¶¶ 34, 37. Plaintiffs argue that Chubb's conduct is an unreasonable and unfair refusal to pay money owed to them under their insurance policy and that this conduct constitutes bad faith.

### B. Defendant's Motion to Dismiss and Reply

In its Motion to Dismiss, Chubb argues that it is not bad faith for an insurer to rely on an independent appraiser that uses an estimating methodology that differs from the insurer's in-house method, so long as the estimate is reasonable. In brief, Chubb's argument is as follows:

- The insurance policy does not state how damage appraisals will be conducted—it neither mentions that appraisals will be made exclusively by Chubb's in-house appraisers nor only using the Symbility estimating software.
- Pennsylvania law indicates that an insurer relying on an independent expert does not constitute bad faith, so long as the independent expert's conclusions are reasonable.

4

- EDS's estimate is reasonable because it was generated by Xactimate, a software program whose estimates have been upheld as reasonable in other courts.
- EDS's estimate is also reasonable because it was only 3% less than the estimate generated by the independent appraiser ordered by the Court.
- Chubb also argues that Plaintiffs must show Chubb hired EDS knowing that EDS's estimate would be lower than Chubb's to sustain a claim for bad faith. Chubb asserts that Plaintiffs have failed to support this allegation.
- Chubb's Reply Brief reasserts that the proper inquiry for a bad faith claim is whether the valuation of EDS was reasonable on the whole—it does not concern the specifics of what methodology was employed.
- Finally, Chubb notes that, although damages have been awarded in bad faith cases where plaintiffs did not suffer any harm, the behavior on the part of those insurer-defendants was especially egregious, which is not the case here.

C.      **Plaintiffs' Response to Defendant's Motion to Dismiss**

Plaintiffs dispute Chubb's characterization of Pennsylvania bad-faith law. While Chubb asserts that bad faith cannot be found where its valuation for Plaintiffs claim was based on a reasonable independent expert's opinion, Plaintiffs contend that the reasonableness inquiry extends to all parts of Chubb's behavior in denying what Plaintiffs allege to be the entire value of their claim.

Specifically, Plaintiffs argue that Chubb's *decision* to employ an independent expert that used Xactimate was frivolous and unfounded—an unreasonable decision because it was motivated by a desire to intentionally undervalue Plaintiff's claim. Plaintiffs do not contest that the use of independent contractors to generate estimates is bad faith in general; rather, they argue

that in their case, given Chubb's standard practice and the allegation that Chubb knew that EDS used a software program that would generate a lower estimate, Chubb's decision to use EDS constitutes bad faith.

Plaintiffs also argue that any reference to the independent appraisal ordered by the Court is inapposite. Whatever the ultimate result of Chubb's actions, Chubb's decision to use EDS instead of an in-house appraiser was based on a bad-faith motive to underpay Plaintiffs' claim. Accordingly, Plaintiffs contend that the proper reasonableness inquiry is one that evaluates the reasonableness of the insurance company's decision to employ EDS at the time this decision was made; it does not depend on the ultimate result of the appraisal.

## V. Legal Standard

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments. *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994). The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. *Angelastro v. Prudential–Bache Sec., Inc.,* 764 F.2d 939, 944 (3d Cir.1985).

The Pennsylvania legislature did not provide a definition of bad faith as the term is used in 42 Pa. Stat. § 8371, the statute under which Plaintiffs bring their claim. In the context of insurance, the Pennsylvania courts have defined bad faith as

> any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

*O'Donnell v. Allstate Ins. Co.,* 734 A.2d 901, 906 (Pa. Super.1999). Typically, to prove bad faith, a plaintiff must show by clear and convincing evidence that the insurer (1) did not have a

reasonable basis for denying benefits under the policy and (2) knew or recklessly disregarded its lack of a reasonable basis in denying the claim. *Rhodes v. USAA Cas. Ins. Co.*, 21 A.3d 1253, 1261 (Pa. Super. Ct. 2011).

Bad faith, however, is not limited to an insurer's decision to deny benefits. "An action for bad faith may also extend to the insurer's investigative practices." *O'Donnell*, 734 A.2d at 906; *see Romano v. Nationwide Mut. Fire Ins. Co.*, 646 A.2d 1228, 1232 (Pa. Super. 1994) (noting that bad faith conduct includes "lack of good faith investigation into facts, and failure to communicate with the claimant"). Thus, in the context of conducting an investigation, bad faith may be shown where the insurer (1) did not have a reasonable basis for the manner in which it conducted its investigation and (2) knew or recklessly disregarded its lack of reasonable basis for how it conducted its investigation. "A 'motive of self-interest or ill will' may be considered in determining whether an [insurer] knowingly or recklessly disregarded its lack of a reasonable basis for denying a claim." *Greene v. United Servs. Auto. Ass'n*, 936 A.2d 1178, 1189-91 (Pa. Super. Ct. 2007) (quoting *Employers Mutual Casualty Company v. Loos,* 476 F.Supp.2d 478, 490–91 (W.D. Pa. 2007)).

**VI.   Discussion**

At the outset, Chubb contends that Plaintiffs' claim fails as a matter of law because there is no precedent finding bad faith under the circumstances that Plaintiffs allege. It does appear that the particular circumstances of this case pose an issue of first impression. This, however, does not mean that Plaintiffs' claim fails. *See Stamerro v. Stamerro*, 889 A.2d 1251, 1259 (Pa. Super. Ct. 2005) ("[A] complete catalogue of types of bad faith is impossible."). Because instances of bad faith can manifest in innumerable variety, Pennsylvania courts have adopted broad principles for determining when a bad-faith action may lie.

> [W]hen evaluating the conduct of an insurer under section 8731, the trial court may look to (1) other cases construing the statute and the law of "bad faith" generally; (2) the plain meaning of the term(s) used in the statute; and/or (3) other statutes upon the same or similar subjects. Specifically, our Court noted that conduct which constitutes a violation of the [Unfair Insurance Practices Act ("UIPA")] may also be considered when determining whether an insurer acted in bad faith under the statute.

*O'Donnell*, 734 A.2d at 906 (internal quotation marks and citations omitted).

The UIPA's proscription of certain means of unfair discrimination is particularly useful in determining whether Plaintiffs state a claim. Under Pennsylvania law, it is an unfair insurance practice to make or permit

> any unfair discrimination between individuals of the same class and of essentially the same hazard in the amount of premium, policy, fees or rates charged for any policy or contract of insurance or in the benefits payable thereunder, or in any of the terms or conditions of such contract, or in any other manner whatever.

40 Pa. Stat. § 1171.5(a)(7).

Here, Plaintiffs have alleged that Chubb's standard practice is to perform appraisals in-house. They have alleged that EDS uses software that assigns cheaper unit costs for repair work than Symbility. They have alleged that Chubb departed from this standard practice for the purpose of obtaining a lower estimate than what would have been generated using Symbility. They have also alleged that Chubb was put on notice of this disparity between Xactimate and Symbility and refused to recalculate the estimate.

As made clear by 40 Pa. Stat. § 1171.5(a)(7), evaluating the claims of similarly-situated insureds differently can constitute an unfair insurance practice and thus may be the basis for a bad-faith action. *O'Donnell*, 734 A.2d at 906. Departing from standard practice in order to generate a lower estimate may prove the dishonest purpose and self-interest that is the hallmark of bad faith. Not only do Plaintiffs allege that Chubb knew that its actions were unreasonable at the time it hired EDS, they also allege that Chubb was put on notice that there were differences

in the estimating programs.  *See Condio v. Erie Ins. Exch.*, 899 A.2d 1136, 1145 (Pa. Super. Ct. 2006) ("Once an insurer identifies a reasonable foundation for denying a claim, it is not relieved of its duty of good faith . . . .  [I]f evidence arises that discredits the insurer's reasonable basis, the insurer's duty of good faith and fair dealing requires it to reconsider its position and act accordingly, all the while remaining "committed to engage in good faith with its insured.").  These allegations, taken as true, are sufficient to state a claim for bad faith under Pennsylvania law.

Chubb also contends that it is effectively immune from a bad-faith claim because the EDS estimate was substantially similar to the court-ordered appraiser's estimate, which was confirmed by the Court, D.E. 20.  The Court need not decide now whether the court-ordered appraisal is relevant to Plaintiffs' claim that Chubb chose to use EDS in an attempt to establish a colorable basis for undervaluing Plaintiffs' damage award.  The principles underlying bad faith's proscription concern the means by which parties fulfill their agreements, not the outcomes derived from them.  *See Dercoli v. Pennsylvania Nat. Mut. Ins. Co.*, 554 A.2d 906, 909 (Pa. 1989) (observing that an insurance company has a duty to deal with its insured "on a fair and frank basis, and at all times, to act in good faith"); *Galatin Fuels, Inc. v. Westchester Fire Ins. Co.*, 244 Fed. Appx. 424, 435 (3d Cir. July 31, 2012) (affirming a finding of bad faith based on the behavior of the insurer where the insurer misrepresented the terms of the policy, dragged its feet in investigating the claim, concealed information from the plaintiff, and shifted its basis for denying plaintiff's claims).

Because Plaintiffs' claim concerns the means employed by Chubb, and the motive behind those means, Chubb's arguments about the reasonableness of the EDS appraisal—as opposed to

9

the decision to use EDS in the first place—miss the mark.  The allegations in the Amended Complaint state a claim for bad faith.

The Court's ruling is compelled by its duty to take all factual allegations in the complaint as true.  It does not preclude Chubb from demonstrating at a later stage in the litigation that it had a reasonable basis for hiring EDS to perform the estimate.  Chubb's practices concerning independent contractors may be relevant, which may establish whether Plaintiffs can show bad faith if Chubb departed from its standard estimation practice.  Discovery will also bring to light what reasons Chubb had in employing an independent contractor, which will assist in determining if Chubb's hiring of an independent contractor was bad faith.  For the purpose of the present Motion, however, the Court must assume that Chubb's reason for hiring EDS was as Plaintiffs' allege.  Plaintiffs have pled sufficient factual allegations to render their claim plausible.  That is all that is required to survive a motion to dismiss.

An appropriate order follows.

O:\CIVIL 11\11-6476 williamson v. chubb\11-cv-6476 Memo of Law Mot to Dismiss 12.19.13.docx